UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ANTWAN ARTIS,

       Plaintiff,

v.

JOSHUA DELPAZ,
ARNIE HOBBS, and
SHAWN WARREN,

       Defendants.
_____/

Case No. 2:22-cv-10537
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT THE REMAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF EXHAUSTION (ECF No. 33)

**I.**    **RECOMMENDATION**: The Court should **GRANT** the remaining Defendants' motion for summary judgment on the basis of exhaustion (ECF No. 33).

**II.**    **REPORT:**

    **A.**    **Background**

On March 4, 2022, while located at the Michigan Department of Corrections (MDOC) G. Robert Cotton Correctional Facility (JCF), Plaintiff Kenneth Antwan Artis initiated this lawsuit against multiple Defendants. (ECF No. 1, PageID.24.) By April 2022, he had been transferred to the MDOC's Gus Harrison Correctional Facility (ARF). (ECF No. 11.) He was paroled on August 16, 2022 and promptly

1

notified the Court of his change in address/contact information.  (*See* www.michigan.gov/corrections, "Offender Search." & ECF No. 30.)

On April 18, 2022, the Court summarily dismissed several Defendants, after which Gaines, Hobbs, Adams, Les Parish, and Malloy remained as defendants. (*See* ECF No. 8; ECF No. 21, PageID.117.)

### B. Amended Complaint

The Court construed Plaintiff's amended complaint (ECF No. 13) as a motion to amend.  (ECF No. 21, PageID.117.)  On June 2, 2022, the Court:

(1) granted Artis's motion to clarify his deliberate indifference claims against both John Does,

(2) denied Artis's motion to add an Eighth Amendment claim against Warren, and

(3) granted Artis's motion to add a First Amendment claim against Warren.

(*Id*.)  (*See also* ECF No. 13, PageID.91-94.)  The Court also ordered Plaintiff to identify both John Does and provide service addresses for John Doe #1, John Doe #2, and Warren.  (*Id*.)

At that point, the operative pleading became the May 4, 2022 amended complaint.  (ECF No. 13.)  On June 23, 2022, Judge Grey entered an order directing the Clerk of the Court to amend the case caption to reflect that only Defendants "Kenneth Artis v. Joshua Delpaz, Arnie Hobbs, and Shawn Warren" remain.  (ECF No. 24, PageID.130.)

### C.   Instant Motion

Although this case was originally assigned to Judge Edmunds and Judge Grey, it has recently been reassigned from Judge Grey, who was handling pretrial matters to me, and Judge Edmunds has referred this case to me for pretrial matters (ECF No. 38).  Currently before the Court is Defendants Delpaz, Hobbs, and Warren's September 6, 2022 motion for summary judgment on the basis of exhaustion.  (ECF No. 33.)  Plaintiff has filed a response (ECF No. 34), Defendants have filed a reply (ECF No. 35), and Plaintiff has submitted "supplemental authority[,]" (ECF No. 37).[1]  This motion is ready for decision.

### D.   Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[1] The Court notes three letters from Plaintiff:  (a) the April 2022 letter purports to provide "new evidence" and attaches several matters, some of which are illegible (ECF No. 9); (b) the May 4, 2022 letter (ECF No. 14) accompanied Plaintiff's same-day amended complaint; and, (c) the November 2022 letter purports to supply "supplemental authority" and attaches a legible copy of RGC-22-01-0054-28IRGC-0054 (ECF No. 37).  While these will not be stricken at this time, the Court hereby reminds Plaintiff that letters to the Court are neither pleadings nor motions and, in the future, will be stricken; as made clear in my Practice Guidelines for *pro se* cases, definitions of and requirements for pleadings and motions are provided in Federal Rules of Civil Procedure 7 through 11, with additional local requirements set forth at Local Rules 7.1 through 11.2.

56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving

4

party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

5

(11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

    E.    **Analysis**

        1.    **Factual allegations**

Plaintiff's lawsuit concerns alleged December 2021 confiscation of his medically necessary insole assistive device, improper assignment to a non-ground level cell, and refusal to provide him with a shower chair assistive device at RGC, as well as alleged January 18, 2022 pursuit of sexual favors by Defendant Warren at RGC (after which Plaintiff filed a Prison Rape Elimination Act (PREA) complaint and was transferred to JCF, where he was "viciously attacked . . .") (ECF No. 13, PageID.89-91.) This Court has already summarized Plaintiff's allegations as follows:

> Artis's right leg is four inches shorter than his left leg due to a gunshot injury. . . . As a result, Artis uses a three-inch insole for his right shoe. . . . John Doe #1 confiscated Artis's insole and ordered Artis to walk upstairs, which resulted in a fall that required hospitalization. . . . John Doe #2 denied Artis's request for a shower chair, which resulted in another fall that required hospitalization. . . . Warren told

6

> Artis that he could "make all of the issues that you are having with staff go away" if Artis would perform fellatio on him. . . . Artis reported the incident, and MDOC transferred him to a different facility, where he was attacked by a prisoner who told Artis to drop the grievance against Warren. . . .

(ECF No. 21, PageID.120 (citing ECF No. 13, PageID.90-91).)

### 2. Exhaustion

Defendants argues that Artis "failed to exhaust his claims against MDOC Defendants Delpaz, Hobbs, or Warren." (ECF No. 33, PageID.163.) "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). The MDOC's 3-step prisoner/parolee grievance procedure is set forth in MDOC PD 03.02.130 (effective March 18, 2019). (ECF No. 33-2.) Importantly, this policy directive provides: "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." (*Id.*, PageID.169 ¶ C.)

### 3. Plaintiff's JCF grievances

#### a. Twenty-seven RGC Step III grievances

Citing Artis's MDOC Prisoner Step III Grievance Report, Defendants contend that, when Plaintiff filed his original complaint on March 4, 2022, "he had not pursued through Step III any grievances which he originally filed at Step I in December 2021 or January 2022." (ECF No. 33, PageID.156.) Plaintiff's Step III grievance report (January 1, 2016 to June 1, 2022) lists twenty-seven RGC grievances, each received at Step I in January 2022 and February 2022. (ECF No. 33-3.) Of these, six were received at Step III on March 21, 2022 and twenty-one were received at Step III on April 8, 2022. (*Id*.) Twenty-four were completed at Step III in April 2022, and three were completed at Step III in May 2022. (*Id*.)

Not one of the twenty-seven grievances was received at Step III before Plaintiff initiated this lawsuit on March 4, 2022. (ECF No. 1.) "The plain language of [42 U.S.C. § 1997e(a)] makes exhaustion a precondition to filing an action in federal court . . . ." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (emphasis added). A prisoner "cannot exhaust these remedies during the pendency of the action." *Roberts v. Lamanna*, 45 F. App'x 515, 516 (6th Cir. 2002) (citing *Freeman*, 196 F.3d at 645). Therefore, Defendants correctly note, these grievances "failed to exhaust the claims in Plaintiff's original complaint." (ECF No. 33, PageID.163.) Moreover, Defendants observe that many of the RGC grievances were "rejected" at some point during the grievance process. (*Id*.; ECF

8

No. 33-3.) "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

In their reply, Defendants assert that, "[b]ecause Artis did not respond to MDOC Defendants' arguments, the Court should find that he has forfeited his responses to MDOC Defendants' arguments." (ECF No. 35, PageID.199.) *See Ritchie v. Coldwater Comm. Sch.*, 947 F. Supp. 2d 791, 825 (W.D. Mich. 2013) ("Ritchie's failure to address Defendants' governmental immunity argument in his response constitutes a waiver of any argument he may have."). While it may be true that Plaintiff did not respond to Defendants' exhaustion motion by relying upon RGC grievances that had been pursued through Step III – *i.e.*, the twenty-seven that appeared on the MDOC Step III Prisoner Grievance Report (ECF No. 33-3) – Plaintiff did respond by pointing to the following two specific grievances. (*See* ECF No. 35, PageID.189, 191, 192, 194.)

### b. RGC-22-01-0054-28I

First, he refers to RGC-22-01-0054-28I, which was received by the RGC Grievance Coordinator at Step I on January 11, 2022. (ECF No. 34, PageID.190; *see also* ECF No. 37, PageID.212.) In this grievance, Plaintiff explains that, on December 29, 2021, he told Delpaz he needed his "[specially] ordered shoe insoles because [his] right leg is 4 inches shorter [than] [his] left one." (*Id.*) In the text of the actual grievance, Plaintiff states:

9

> I rode into this [facility] on the above date of [December 29, 2021] which at the time I was coming from Kent County Jail being held for a parole & [illegible] violation charge [which] was [dismissed]. During my intake process informed officers Delpaz [and] Cooper who had to leave [be]cause his shift was over that I [needed] . . . my 4 inch insole that was in my shoes. Because my [le]ft leg is longer [than] my right from [multiple] right femur . . . breaks . . which I was then told [medical] had to approve it [but] I would be able to get pushed in a wheelchair. I said [ok]ay. [T]hen I get sent to the [illegible] which then I'm told to go (tier #2) I told the C/Os I couldn't [be]cause of my leg but [wa]s still made [illegible] which is not right & put my life in danger[.]

(*Id.*) In other words, RGC-0054 concerned Plaintiff's alleged need for an insole and perhaps also his alleged need for a ground-level cell.

Hawkins rejected RGC-0054 with the explanation Plaintiff "failed to attempt to resolve with proper staff needs to kite medical." (*Id.*) MDOC PD 03.02.130 expressly provides that a grievance "shall be rejected by the Grievance Coordinator if . . . [t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of Internal Affairs in the Office of Executive Affairs." (ECF No. 33-2, PageID.170 ¶ J(4); *see also id.*, PageID.172 ¶ Q.) Plaintiff contends this rejection "was predicated on machination and misrepresentation by the grievance coordinator[,]" and "thwart[ed] Plaintiff's resort to the grievance process." (ECF No. 34, PageID.189.) *See Ross v. Blake*, 578 U.S. 632, 644 (2016) (the administrative grievance process is "unavailable"

10

when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.").

Whatever the intent of the Step I respondent, Plaintiff makes the following, reasonable challenge to the rejection of this grievance:

> Here, Defendant Delpaz was the custody officer on-duty and assigned to the very location where the incident occurred, and was thus undoubtedly "the staff member involved" in the matter. As Plaintiff stated in his Step I grievance, he attempted to resolve (and avoid) the looming danger to his person by speaking directly with Defendant Delpaz, but this proved unavailing and he was thereafter given a direct order to proceed to the second-story cell. See Plaintiff's affidavit, appended.
>
> Nevertheless, assuming arguendo that "Medical" was the department that Plaintiff should have attempted to contact pre-grievance, he was abjectly prevented from doing so by the immediateness of the circumstances. As explained, supra, he was given a direct order to immediately proceed to the second-story cell without his shoe insole or be placed in Segregation and issued a misconduct report for disobeying a direct order. Under MDOC policy and protocol, prisoners can contact Health Care Services only in writing, and any response takes a minimum of two business days. It was therefore impossible for Plaintiff, under the circumstances, to attempt resolution of the deprivation of his shoe insole with "Medical" at the time he was being ordered to proceed to the second-story without it.

(ECF No. 34, PageID.191.)

Notwithstanding Plaintiff's reasonable challenge, as to this particular grievance (which concerns an insole and ground-level cell), Defendants point out it does not appear on the MDOC Step III Prisoner Grievance Report (ECF No. 33-3). (ECF No. 35, PageID.200.) If a grievance is allegedly improperly rejected at Step

11

I, Plaintiff cannot simply abandon the grievance process. Instead, he should appeal the allegedly improper rejection to Steps II and III, which gives the MDOC the opportunity to correct the alleged improper Step I rejection. *See Brown v. Haiderer*, No. 4:21-CV-11565, 2022 WL 4006951, at *5 (E.D. Mich. May 17, 2022) (Morris, M.J.) ("While Plaintiff can argue that his grievance was improperly rejected as duplicative at Step I, his remedy was to appeal that determination at Steps II and III."), *report and recommendation adopted*, No. 21-CV-11565, 2022 WL 4002299 (E.D. Mich. Sept. 1, 2022) (Leitman, J.).

### c. RGC-22-01-0121-27B

Second, Plaintiff refers to RGC-22-01-0121-27B, which Plaintiff claims "grieved the fact that he was still being deprived of his shoe insole." (ECF No. 34, PageID.191.) Defendants submitted a copy of that grievance, which lists an incident date of December 31, 2021 and describes how Plaintiff allegedly attempted to resolve the issue:

> I talked to Okwloka the other physic & Ms. Bursette the health ch[ie]f about this on [January 5, 2022] . . . in the 4-east dayroom with Dr. Fortshyle also . . (POA) is the reason for delay in (grievance wrote)[.]

(ECF No. 35-1, PageID.204.)[2] As for the substance of the grievance, Plaintiff wrote:

---

[2] It is not clear why Plaintiff uses the abbreviation "POA," although the Court suspects this is a reference to some type of mental health "treatment plan." *See, e.g.*, MDOC PD 04.06.180 ("Mental Health Services"), effective Oct. 10, 2022.

> I don't know the name of the physic doctor that I s[aw] on [December 31, 2021] [in] Room (435 east) but I can tell you that I never once told him I was [suicidal] or going to hurt anyone . . but he still put me on (P.O.A.) status . . once I s[aw] him again I asked him why & was told off of what the nurses & staff had written I was doing & about me . . wh[i]ch is clearly not right at all & why Ms. Bursette came in on [January 5, 2022] [and] took me off . . they are supposed to e[valu]ate you on what they see & hear not anyone else. I was placed on POA status for 5 days & it put me in a real black mental state of min[d] that I have been in since a kid in [illegible] I'm [emotionally] still [scarred].

(*Id.*) In other words, RGC-0121 purportedly concerns something that happened on December 31, 2021, perhaps Plaintiff's placement on some type of mental health treatment plan.

It appears Plaintiff completed this grievance form on January 13, 2022, and it was received at Step I on January 20, 2022. (*Id.*) That same day, Hawkins rejected RGC-0121 with reference to MDOC PD 03.02.130 and the explanation that "the content of policy and procedures are non-grievable." (Id., PageID.193.) Accordingly, RGC-0121 was "denied at first step." (*Id.*.)

Defendants observe that Plaintiff did not pursue RGC-0121 to Step III. (ECF No. 35, PageID.200.) But, Plaintiff's failure to do so makes perfect sense. According to Plaintiff, he "<u>did attempt</u> to resolve the issue with 'Medical,' and yet the same grievance coordinator rejected this grievance . . . as being 'non-grievable.'" (*Id.*, PageID.192.) Plaintiff claims this is evidence of "machination and misrepresentation," leading to the contention that "administrative remedies

must be considered as 'unavailable' in this case." (*Id.*) Perhaps more convincingly, Plaintiff notes, if RGC-22-01-0121-27B was rejected as "non-grievable," and, he "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). *See also Reeves v. Hobbs*, No. 11-6047, 2013 WL 5462147, at *6 (W.D. Ark. Sept. 30, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because Plaintiff failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and it too."), *aff'd sub nom. Reeves v. King*, 774 F.3d 430 (8th Cir. 2014). "It is well settled, and common sense, that a prisoner 'cannot be required to exhaust administrative remedies regarding non-grievable issues.'" *Annabel v. Campbell*, No. CV 20-11114, 2022 WL 6580974, at *6 (E.D. Mich. Jan. 4, 2022) (Grand, M.J.), *report and recommendation adopted*, No. 20-CV-11114, 2022 WL 4553122 (E.D. Mich. Sept. 29, 2022) (Levy, J.), *motion for relief from judgment denied*, No. 20-CV-11114, 2022 WL 17361965 (E.D. Mich. Dec. 1, 2022) (Levy, J.).[3]

Defendants also contend that Plaintiff did not support his RGC-0121 argument by providing a copy of it. (ECF No. 35, PageID.200.) Referencing the

---

[3] (*See also* ECF No. 34, PageID.195-196 ["Affidavit of Kenneth Artis"].) Notably, neither Plaintiff's response nor his attached "affidavit" are signed. (ECF No. 34, PageID.194, 196.)

14

copy they provide (*see* ECF No. 35-1, PageID.204), Defendants contend "the allegations in RGC-121 do not correspond to any claims raised in Artis' complaint or amended complaint." (ECF No. 35, PageID.200-201.) In other words, "RGC121 is not relevant to Artis' claims against MDOC Defendants, so it could not and did not exhaust any claims against them." (*Id*., PageID.201.) Here, the Court need not determine whether the claims in the amended complaint were also within the original complaint, because the substance of RGC-0121, which purports to concern a December 31, 2021 incident (ECF No. 35-1, PageID.204), does not appear related to the operative, amended complaint's allegations with respect to Plaintiff's December 31, 2021 request for a shower chair, his attempt to take a shower without the use of a shower chair, and the resulting "catastrophic fall." (ECF No. 13, PageID.90-91 ¶¶ g, h.) Nor, as Plaintiff suggests in his response, did RGC-22-01-0121-27B grieve "the fact that he was still being deprived of his shoe insole." (ECF No. 34, PageID.191.) Likewise, RGC-0121 does not appear to concern either Plaintiff's alleged improper December 2021 assignment to a non-ground level cell at RGC or the alleged January 18, 2022 pursuit of sexual favors by Defendant Warren at RGC; indeed, the latter allegation post-dates RGC-0121's December 31, 2021 date of incident, even though the grievance was dated January 13, 2022 and not received at Step I until January 20, 2022.

15

### d. Failure to exhaust not cured

There is one further point to be made. In their opening motion, Defendants anticipate an argument from Plaintiff that his supplement – *i.e.*, any claims newly added by the now operative May 4, 2022 amended complaint (ECF No. 13) – cures the exhaustion issue[,]" and contend that, "Artis did not exhaust any claims when he filed his original complaint, so he could not add any claims that may have been exhausted since he filed his original complaint." (ECF No 33, PageID.164.)

In *Mattox v. Edelman*, 851 F.3d 583 (6th Cir. 2017), the Sixth Circuit discussed the "interaction between the PLRA and Rule 15[.]" *Mattox*, 851 F.3d at 591-595. With a nod to *Mattox*, I have previously noted that Section 1997e(a) applies to claims added by amendment. *See Cavin v. McBride*, No. 4:20-CV-12470, 2023 WL 1771170, at *9 (E.D. Mich. Jan. 4, 2023) (Patti, M.J.) (referencing *Mattox*, 851 F.3d at 592), *report and recommendation adopted*, No. 20-12470, 2023 WL 1767753 (E.D. Mich. Feb. 3, 2023) (Kumar, J.). As the Sixth Circuit stated, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*." *Id.*, 851 F.3d at 595 (emphasis added) (external footnote omitted).

16

It turns out Plaintiff's responsive argument is of a different ilk. Instead of arguing that his supplement (*i.e.*, newly added claims within the amended complaint) cures the exhaustion issue, Plaintiff responds that, "contrary to Defendants' claim, there are at least two fully exhausted claims pertaining to the original complaint, and this permits Plaintiff to file an amended complaint[,]" (ECF No. 34, PageID.192, 194). However, this report has already addressed why RGC-0054 and RGC-0121 do not operate properly exhaust Plaintiff's claims against Defendants that are currently before this Court. (*See* Sections E.3.b & E.3.c.)

### F. Conclusion

As set forth in greater detail above, not one of Plaintiff's twenty-seven RGC Step III grievances was received at Step III before Plaintiff initiated his lawsuit in March 2022 (Section E.3.a), Plaintiff does not appear to have appealed through Step III the allegedly improper Step I rejection in RGC-0054 (Section E.3.b), RGC-0121 does not appear related to the amended complaint's allegations (Section E.3.c). Accordingly, the Court should **GRANT** the remaining Defendants' motion for summary judgment on the basis of exhaustion (ECF No. 33), thus closing the case.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc*. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: April 12, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE